IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHARON DOUGHERTY                                          PLAINTIFF

v.                          Civil No. 11-3032

MICHAEL J.  ASTRUE, Commissioner
Social Security Administration                           DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Sharon Dougherty, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I.     Procedural Background:

The plaintiff filed her application for DIB on August 31, 2007, alleging an onset date of October 1, 2007, due to thrombophlebitis[1], back pain, degenerative disk disease, degenerative joint disease, scoliosis, fibromyalgia, gastroesophageal reflux disease ("GERD"), and depression.  Tr. 14, 21, 58-60, 65-66, 96-97, 100-102, 108-109, 112, 114, 153, 157-158, 169-171.   The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 26-27, 47.  An administrative hearing was held on July 23, 2008.  Tr. 359-400.  Plaintiff was present and represented by counsel.

---

[1]Thrombophlebitis is swelling in a vein caused by a blood clot. *See* Mayo Foundation for Medical Education and Research, *Thrombophlebitis*, http://www.mayoclinic.com/health/thrombophlebitis/DS00223 (Last visited May 1, 2012).

AO72A
(Rev. 8/82)

At the time of the hearing, Plaintiff was 46 years old and possessed a high school education with two years of college credit, but had obtained no certification or degree. Tr. 74, 295, 364, 368. She had past relevant work ("PRW") experience as a cook, cashier, and shift supervisor in the fast food industry. Tr. 66-67, 78-85, 154-157, 365. Records indicate that Plaintiff continued to work part-time at a fast food restaurant after her onset date, although her earnings did not rise to the level of substantial gainful activity. Tr. 354-57, 61-64, 65-66, 94, 105, 117-124, 125-137, 138-147, 153, 156-157, 366, 373, 385-386.

On December 21, 2009, the ALJ found Plaintiff's fibromyalgia and depression to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 through December 31, 2011, her date last insured. Tr. 14-16. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform light work involving simple, repetitive tasks. Tr. 16-20. With the assistance of a vocational expert, the ALJ found plaintiff could perform her PRW as a fast food manager and fast food worker. Tr. 20.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 11, 2011. Tr. 3-5. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 5, 6.

## II.    **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

2

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

3

given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. __Evidence Presented__:

Records indicate that Plaintiff had a history of treatment for GERD, an upper respiratory infection, bronchitis, right upper quadrant pain radiating into the right shoulder blade aggravated by eating, superficial thrombophlebitis, fatigue, urinary frequency, and back pain. Tr. 184-204, 213, 231, 284-291. Plaintiff also received chiropractic treatment from 2003 until 2009 for back and shoulder pain. Tr. 321-332.

In April 2007, Plaintiff was diagnosed with superficial thrombophlebitis in her left leg. A venous doppler of her left lower extremity revealed no evidence of deep venous thrombosis. Tr. 293, 358. Plaintiff's doctor took her off work for two weeks and recommended that she elevate her legs, use moist heat, and wear support hose. Tr. 183-196, 265-293.

In May 2007, Plaintiff underwent a laparoscopic cholecystectomy with cholangiogram. Tr. 176-183, 356. At the time of her surgery, a superficial thrombophlebitis was palpable, and an incision was made isolating, retrieving, and ligating each end without difficulty. Tr. 180. Her postoperative course appears to have been unremarkable. Tr. 176.

In September 2007, Plaintiff was treated for bilateral back pain. Tr. 183. An examination revealed reproducible palpable tenderness of the bilateral latissimus dorsi muscles. Plaintiff had a full range of motion in her shoulders and normal reflexes in the upper extremities.

4

Dr. Edward White diagnosed Plaintiff with bilateral mid-back pain, suspect bilateral latissimus dorsi strain and prescribed Meloxicam and Cyclobenzaprine.  Tr. 183.

On October 15, 2007, Plaintiff complained of mid-back pain after eating, fatigue, insomnia, depression, reflux symptoms, intermittent pelvic cramping, and clots.  Tr. 227-228, 245.  An examination revealed tenderness along the T9 and T10 levels bilaterally, right upper quadrant tenderness, and trace pitting edema.  Dr. Cheney diagnosed her with back and abdominal pain, obesity, menorrhagia, pelvic cramping, depression, and GERD.  She prescribed Nexium and ordered x-rays of Plaintiff's lumbar spine, an abdominal ultrasound, and a transvaginal ultrasound.  Tr. 227-228.

On October 17, 2007, x-rays of Plaintiff's thoracic spine revealed mild degenerative changes and mild dextroscoliosis.  Tr. 205-206, 223.  A pelvic ultrasound also revealed three fibroids and a thickened endometrial stripe.  Tr. 207, 224, 279, 347.  Further, a transvaginal pelvic ultrasound showed three fibroids and a cervical cyst.  Tr. 208, 225, 280, 348.

On October 31, 2007, Plaintiff was evaluated by Dr. Linda Teal on referral from Dr. Cheney.  Tr. 218.  No abdominal tenderness or acute distress was noted.  After examining Plaintiff, she diagnosed her with menorrhagia, uterine leomyoma, a history of deep vein thrombosis, GERD, and depression.  Dr. Cheney recommended a diagnostic hysteroscopy and fractional D & C for further evaluation.  The procedure was preformed on November 13.  Tr. 218, 247, 252, 266-274, 339-343.  Aside from an allergic reaction to the Darvocet prescribed for post operative pain, her recovery was unremarkable. Tr. 249.  Plaintiff reported feeling much better.  Tr. 219.

5

On November 14, 2007, Plaintiff underwent a neuropsychological evaluation with Dr. Vann Smith.  Tr. 256-259.  Dr. Smith indicated that although requested, he had not reviewed Plaintiff's medical records.  Instead, he relied on her subjective complaints in preparing his report.  Plaintiff reported a history of worsening impaired recall/declarative memory, dysexecutivism, sleep disturbance, and affective lability.  She relayed a history of degenerative disk disease; scoliosis; degenerative joint disease; chronic fatigue; and, chronic, frequently immobilizing multifocal pain which she ranked as an 8 or 9 on a 10-point scale.  Dr. Smith also noted that Plaintiff had admitted to an incident of closed head trauma for which she was not evaluated nor treated.  However, her history was negative for psychiatric attention aside from participating in family therapy with her son who had been diagnosed with attention deficit disorder.  Dr. Smith's exam noted orientation in all spheres, a somewhat muted but flexible affect, a mildly anxious mood, mildly impaired memory, intact judgment and insight, appropriate eye contact, and normal intelligence.  He diagnosed her with cognitive dysfunction secondary to a general medical condition.  Tr. 256-259.

Dr. Smith also completed a mental RFC assessment.  Tr. 260-264.  After assessing Plaintiff with a fair prognosis, he concluded Plaintiff would be unable to meet competitive standards with regard to remembering work-like procedures; maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; understanding and remembering detailed instructions; carrying out detailed instructions; setting realistic goals

6

or making plans independently of others; and, dealing with the stress of semiskilled or skilled work. Dr. Smith also determined Plaintiff was seriously limited, but not precluded from working in coordination with or proximity to others without being unduly distracted, traveling in an unfamiliar place, and using public transportation. He indicated that her impairments would result in her missing more than four days of work per month. Tr. 260-264.

On November 28, 2007, Plaintiff followed-up with Dr. Teal. Tr. 219. Final pathology had revealed benign endocervical tissue and secretory endometrium. Tr. 254. No intraluminal lesions were identified. Plaintiff indicated that she was feeling much better. Ibuprofen had been effective in relieving her pain. Dr. Teal diagnosed Plaintiff with menorrhagia and uterine leiomyoma and prescribed Ibuprofen. Tr. 219.

On February 14, 2008, Dr. Cheney noted multiple diffuse trigger points (trapezius, periscapular, sacroiliac joint, sternum, and quadriceps). Tr. 217. She diagnosed Plaintiff with probable fibromyalgia, depression, and a breast nodule. Dr. Cheney then prescribed Zanaflex and increased Plaintiff's Zoloft dosage. Tr. 217. A few days later, Plaintiff was switched to Skelaxin due to an allergic reaction to Zanaflex. Tr. 217.

On February 27, 2008, Dr. Cheney's notes indicate that Plaintiff had surface blood clots on her upper right leg with associated pain. Tr. 217. Plaintiff requested time off from work. Dr. Cheney noted that Plaintiff had not been taking aspirin. Tr. 217.

On March 17, 2008, Plaintiff underwent a mental diagnostic evaluation with Dr. Robert Hudson. Tr. 294-297. Plaintiff reported that her primary claim to disability was due to blood clots in her legs and fibromyalgia. However, she also complained of depression and anxiety and stated that her concentration and memory were compromised. Her symptoms included crying

7

spells, occasional suicidal ideations, anxiety over the thought of death, and poor sleep.  Although Plaintiff had received no mental health treatment, she was receiving Sertraline from her general practitioner.  Dr. Hudson noted that Plaintiff had a sad, despondent aura to her.  Her range of expression was limited; her thoughts logical, relevant, and goal directed; and, her associations intact.  Dr. Hudson diagnosed Plaintiff with dysthymic disorder and eating disorder not otherwise specified.  He stated that she seemed to have chronic depression and anxiety, but neither was severe.  Dr. Hudson assessed her with a GAF of 55, noting that she had no apparent significant limitations in her adaptive ability and was able to stay alone (her husband drove a truck).  Although she did have a limited social interaction (self-conscious about her weight), she had no significant limitations in her communication ability or her mental/cognitive ability to perform basic work-like tasks.  Persistence in completing tasks and the ability to complete tasks in a timely fashion were also problem areas for Plaintiff.  Tr. 294-297.

On May 14, 2009, Plaintiff presented for a complete physical with Dr. Cheney.  Tr. 321-322.  Notes indicate that she had few complaints aside from myalgias across her neck, shoulders, and arms and aching varicose veins.  Zanaflex made her feel like her throat was swollen and the Skelaxin was not helping.  Plaintiff continued to report problems going to sleep and did not feel like she slept well.  Depression also persisted, in spite of her taking Zoloft, and Plaintiff reported continued intermittent chest pain.  She also experienced occasional reflux which was relieved via Nexium.  An examination revealed several varicose veins in both legs, right greater than left with no real telanglectasis or ulceration.  Dr. Cheney diagnosed Plaintiff with fibromyalgia, insomnia, depression, fibrocystic breast, possible Tietze syndrome (inflammation of the costochondral cartilages of the upper front of the chest), GERD, and varicose veins.  She

AO72A
(Rev. 8/82)

changed Plaintiff from Zoloft to Cymbalta; prescribed Flexeril; advised Plaintiff to decrease her caffeine intake; recommended the use of heat and anti-inflammatories; and, prescribed Vitamin D, Calcium, and Nexium.  Tr. 321-322.

**IV.   Discussion:**

Plaintiff contends that the ALJ erred by failing to follow the requirements of *Polaski*, concluding that her subjective complaints were not credible, concluding that her thrombophlebitis and back pain/degenerative disk disease were non-severe impairments, failing to obtain an RFC assessment from Plaintiff's treating doctor, and determining Plaintiff could stand long enough to perform a full range of light work.  Because our role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole, we will begin our analysis with an evaluation of the ALJ's credibility findings.  *See Cox*, 495 F.3d at 617.

When evaluating the credibility of Plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).  An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the

9

plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

The standard of evaluation is not whether Plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work). Thus, the mere fact that an individual suffers from pain with no evidence of limitations resulting from that pain, is insufficient to warrant a finding of disability. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that Plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with Plaintiff's allegations of disability.

At the outset, the ALJ concluded that Plaintiff suffered from the following severe impairments: fibromyalgia and depression. She found that Plaintiff's complaints of degenerative disk disease, degenerative joint disease, scoliosis, and pain disorder did not result from anatomical, physiological, or psychological abnormalities that were shown by medically acceptable clinical or laboratory diagnostic tests. Further, the ALJ determined that Plaintiff's GERD symptoms were well-controlled via medication, also rendering this impairment non-severe.

The medical evidence reveals that Plaintiff complained of myalgias, multiple diffuse trigger points, disturbed sleep, fatigue, anxiety, depression, abdominal pain, and painful varicose veins. Tr. 217, 321-322. In May 2007, Plaintiff underwent a laparoscopic cholecystectomy with a cholangiogram. Tr. 176-183, 356. After this date, Plaintiff complained of mid-back pain/chest pain after eating on only two occasions. Tr. 227-228, 245, 321-322.

In October 2007, Plaintiff was prescribed Nexium for her GERD symptoms. Tr. 227-228. X-rays of her thoracic spine revealed mild degenerative changes and mild dextroscoliosis.[2] Tr. 205-206, 223. However, no other abnormalities were noted. On November 13, 2007, Plaintiff underwent a diagnostic hysteroscopy and a fractional D & C due to abdominal pain. Tr. 218, 247, 252, 266-274, 339-343.

In February 2008, Dr. Cheney diagnosed Plaintiff with probable fibromyalgia. Tr. 217. This was followed by a formal diagnosis of fibromyalgia in 2009. Tr. 321-322. At this time, tenderness was noted over the lower ribs anteriorly, but there was no real abdominal tenderness.

---

[2]Aside from this report from radiology, the record contains no formal diagnosis of scoliosis.

Several varicose veins were also evident in both legs, but no telangiectasias[3] or ulceration was noted.  Further, Plaintiff reported that Nexium was effective at treating her GERD symptoms.  Tr. 321-322.

Fibromyalgia is a condition that causes pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues.  Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The disease is chronic, and "[d]iagnosis is usually made [only] after eliminating other conditions." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003).  The principal symptoms are "pain all over," trauma, anxiety, fatigue, disturbed sleep, stiffness, irritable bowel symptoms, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely eighteen fixed locations on the body that when pressed firmly cause the patient who really has fibromyalgia to flinch.  *See* THE MERCK MANUAL 1369-1371 (16th ed. 1992).

Plaintiff contends that the ALJ erred by failing to conclude that her back pain, degenerative disk disease, and scoliosis were non-severe impairments.  We note, however, that the only x-rays of her spine included in the record revealed mild degenerative changes and mild dextroscoliosis.  And, while Plaintiff did voice some complaints of back pain, it was later determined that she suffered from fibromyalgia, which can also cause back pain.  Therefore, we believe that Plaintiff's back impairment and alleged pain disorder were properly considered in the ALJ's finding that her fibromyalgia was a severe impairment.

---

[3]Telangiectasias refers to a visibly dilated blood vessel on the skin or mucosal surface.

12

Plaintiff also takes issue with the ALJ's failure to conclude that her thrombophlebitis (blood clots) was severe.   In early 2007, Plaintiff was diagnosed with superficial thrombophlebitis.  A venous doppler of her left lower extremity, conducted in April revealed no evidence of deep venous thrombosis.  Tr. 293.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Plaintiff's doctor took her off work for two weeks and recommended that she elevate her legs, use moist heat, and wear support hose.  In May 2007, when Plaintiff had her gall bladder removed, the doctor isolated, retrieved, and ligated the thrombophlebitis.  Tr. 180.  No further complaints were raised until February 2008, when Dr. Cheney diagnosed her with surface blood clots on her upper right leg with associated pain.  Tr. 217.  Then, in May 2009, Dr. Cheney diagnosed Plaintiff with painful varicose veins.  Tr. 321-322.

We can find no evidence to indicate that Plaintiff was suffering from deep venous thrombosis, that her blood clots were anything other than superficial, that her condition was severe enough to warrant a second venous doppler, or that her doctor restricted her activities in any way, during the relevant time period, due to this impairment.  *See Raney*, 396 F.3d at 1010. A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis.  *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).  Accordingly, we find that substantial evidence supports the ALJ's conclusion that Plaintiff's thrombophlebitis was non-severe.

Although not specifically raised by Plaintiff, we also find that the ALJ did not err in concluding that her GERD was non-severe.  Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical

13

record. *Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir.2000);  see also *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). As Plaintiff's GERD was amenable to treatment, we can not say that it significantly limited her physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153 (1987) (O'Connor, J., concurring).

With regard to Plaintiff's abdominal pain, we also find substantial evidence supporting the ALJ's finding.  Plaintiff complained of abdominal pain on only a few occasions.  After undergoing surgery in 2007, only one additional complaint was lodged, at which point Dr. Cheney found no abdominal tenderness or pain.  Tr. 321-322.  Accordingly, we can find no evidence to indicate that Plaintiff's abdominal pain was severe.  However, we also believe that Plaintiff's abdominal pain could be the result of her fibromyalgia, and was properly considered when the ALJ concluded that her fibromyalgia was severe.

Substantial evidence also supports the ALJ's conclusion that, although severe, Plaintiff's fibromyalgia did not meet or equal one of the listings, as Plaintiff did not seek out consistent medical treatment, received no physical restrictions from her treating doctors, and reported the ability to perform activities that were inconsistent with a finding of disability. *See Edwards*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment); *see also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined the claimant was so impaired or disabled that the claimant could not work at any job).  Plaintiff alleges that her condition worsened, rendering her unable to continue working full-time at McDonald's.  In reviewing the medical evidence, we can find no evidence to indicate that

AO72A
(Rev. 8/82)

Plaintiff's fibromyalgia or myalgias worsened at any time during the relevant time period.  In fact, Plaintiff sought out treatment for her pain on only a few occasions.  Tr. 183, 217, 321-322.  *See Edwards*, 314 F.3d at 967.  Further, conservative measures including anti-inflammatories, muscle relaxers, anti-depressants, and chiropractic adjustments were prescribed to treat Plaintiff's pain.  *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).  Medications used to treat moderate to severe pain were not prescribed.  *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain).  And, the record contains no evidence to suggest that her symptoms warranted emergency treatment or hospitalization.

However, the most damaging evidence is the fact that Plaintiff continued to work, albeit part-time, even after her condition purportedly worsened in October 2007.  *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.  We will consider all of the medical and vocational evidence in your file to determine whether or not you have the ability to engage in substantial gainful activity."); *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969 (8th Cir. 2003) (holding that even part-time work is inconsistent with claim of disability).  She did testify that her pain was severe by the end of her shift.  And, her husband indicated that she would often sit in the car for ten minutes before getting out and coming inside, due to extreme pain and fatigue.  Nevertheless, absent a showing of deterioration, which we can find no evidence of here, working after the onset of an impairment is some evidence of an ability to work.  *See Goff,* 421 F.3d at 793 (8th Cir. 2005).  The fact that working causes Plaintiff pain and/or discomfort is not

15

determinative.  The question is whether the pain prevents her from performing any kind of work.  *See Gowell*, 242 F.3d at 796.  In this case, it did not prevent Plaintiff from continuing to work part-time as a fast food worker.[4]

From a mental standpoint, we do note that Plaintiff was diagnosed with depression and treated conservatively via medication for several years.  *See Smith*, 987 F.2d at 1374.  In fact, Plaintiff admitted that the Cymbalta was somewhat effective at treating her depression.  *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (holding that an impairment that can be controlled by treatment or medication is not disabling).  She has, however, denied a history of mental health treatment.  And, aside from the psychological evaluations prepared in connection with her application for disability, the record is devoid of any evidence to indicate that she has ever been treated by a mental health professional.  This lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).  It is also significant to note that, Plaintiff reported no difficulty following written or spoken instructions, paying attention, or getting along with authority figures.  Tr. 91-92.  Further, she continued to work part-time, in spite of her depression.

Plaintiff's activities of daily living also detract from her contention of disability.  On an adult function report dated January 3, 2008, Plaintiff reported the ability to care for her personal hygiene (with some limitations related to pain), prepare microwave meals and sandwiches daily,

---

[4] As stated in *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  We believe this has been established by the fact that Plaintiff is currently performing the very work the ALJ concluded she could perform.

16

sweep, do some laundry, "pick up" around the house, drive a car, ride in a car, go out alone, shop for groceries and household supplies weekly, pay bills, count change, handle a savings account, use a checkbook/money orders, read, watch television, do needle point (occasionally), listen to music, attend church weekly, and attend TOPS (Take Off Pounds Sensibly) meetings weekly. Tr. 86-90, 95.  On paperwork she completed for her attorney, she also indicated that she drove, cooked, washed dishes, cleaned house, made the bed, watched TV, listened to the radio, read, talked on the phone, groomed herself, and performed hobbies daily; did the laundry, shopped for groceries, participated in organizations and church, visited relatives and friends; and, went out to eat or to the movies (after church on Sunday) weekly; and dusted, handled finances, and talked to neighbors monthly.  Tr. 167.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).  Clearly, these activities do not support plaintiff's claim of disability.

After reviewing the entire record in this case, we find that neither the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

17

We have also reviewed the letter prepared by Plaintiff's husband, indicating that her condition began to deteriorate in 2007 due to her diagnoses of fibromyalgia and depression. Tr. 175. In 2008, her condition reportedly forced them to move from a split-level home into a single level home and remodel their bathroom, installing a regular shower and taller commode. Mr. Dougherty also indicated that Plaintiff had cut her work hours back, such that she worked two five or six hour days, had two days off, then worked an additional two five or six hours days, and had Sundays off. Work reportedly caused Plaintiff a great deal of pain and fatigue, causing her to sometimes sit in her car in the driveway for ten or fifteen minutes in order to gather enough energy to come into the house. Tr. 175. The ALJ considered this testimony, but found it lacking credibility, due to Mr. Dougherty's sympathy for Plaintiff and secondary gain issues. This determination was within the ALJ's province. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993). The ALJ is not required to accept a statement from a witness who will benefit financially from a determination of disability. *Buckner v. Apfel,* 213 F.3d 1006, 1013 (8th Cir.2000).

We next turn to the ALJ's determination that plaintiff had the RFC to perform light work involving simple, repetitive tasks. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual

18

functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective

complaints, plaintiff's testimony regarding her daily activities, and the RFC assessments

prepared by the consultative doctors. On February 7, 2008, Dr. R. W. Beard reviewed Plaintiff's

medical records and concluded that Plaintiff's physical impairment was non-severe. Tr. 316-

317.

On April 1, 2008, Dr. Jay Rankin completed a psychiatric review technique form and a

mental RFC assessment. Tr. 298-315. After reviewing her medical records, Dr. Rankin

diagnosed Plaintiff with dysthymia. He concluded that Plaintiff was moderately limited with

regard to understanding, remembering, and carrying out detailed instructions; maintaining

attention and concentration for extended periods; completing a normal workday and workweek

without interruptions from psychologically based symptoms; performing at a consistent pace

without an unreasonable number and length of rest periods; interacting appropriately with the

general public; asking simple questions or requesting assistance; accepting instructions and

responding appropriately to criticism from supervisors; getting along with coworkers or peers

without distracting from them; exhibiting behavioral extremes; maintaining socially appropriate

behavior; adhering to basic standards of neatness and cleanliness; responding appropriately to

changes in work setting; traveling in unfamiliar places; using public transportation; setting

realistic goals; or, making plans independently of others. However, he noted no episodes of

19

decompensation.  Dr. Rankin indicated that Plaintiff was able to perform work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and requiring little judgment, and the supervision required is simple, direct, and concrete.  Tr. 298-315.

Plaintiff takes issue with the ALJ's determination that she can stand and walk the length of time necessary to perform light level work.  A job is defined as light work when it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *See* 20 C. F. R. § 404.1567.  We note that Plaintiff advised her attorney that she could stand eight hours per day.  Tr. 166.  Further, she testified that she was able to stand and walk five to six hours several days per week to complete her shifts at McDonald's.  Accordingly, we believe that substantial evidence exits to support the ALJ's conclusion that Plaintiff could perform the requisite activities involved in light work.

Further, although Plaintiff suffered from depression, Dr. Hudson concluded that neither her anxiety nor her depression were severe.  Tr. 294-297.  Her thoughts were logical, relevant, and goal directed, her associations were intact, she had no significant limitations in her communication ability, and she retained the mental/cognitive ability to perform basic work-like tasks.  Dr. Hudson also found her to have no limitations in her adaptive ability, noting that she was able to stay home alone while her husband drove a truck.  Tr. 294-297.  Plaintiff even testified that her job at McDonald's required constant interaction with the public and reported no difficulty dealing with others.

20

We are cognizant of Dr. Smith's neuropsychological assessment of Plaintiff, which was much more restrictive. Tr. 256-264. However, as we have noted in the past, Dr. Smith[5] does not review the Plaintiff's medical records prior to rendering his opinion. His opinions are based largely on Plaintiff's subjective complaints. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (opinion of consulting physician is not entitled to special deference, especially when it is based largely on claimant's subjective complaints). In this case, he gave great weight to Plaintiff's report of a closed head injury for which she underwent no treatment. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). And, although Dr. Smith did administer a battery of neurocognitive tests which he states support his opinion, his observations during the evaluation contradict his claim that Plaintiff's cognitive impairment (loss of intellectual functions) is disabling. For example, he observed that Plaintiff was oriented in all spheres, had only a mild memory impairment, had intact memory and judgment, maintained appropriate eye contact, and had average intelligence. Dr. Smith's assessment is also contradicted both by Dr. Hudson, who examined Plaintiff, and Dr. Rankin who reviewed her medical records. The fact that Plaintiff has continued to work part-time at McDonald's also undermines Dr. Smith's opinion that she would be unable to return

---

[5]We also note that Plaintiff's counsel sends all of his clients to Dr. Smith for a neuropsychological evaluation. Interestingly, in each case, Dr. Smith finds that the Plaintiff suffers from either cognitive dysfunction or organic brain disorder. These diagnoses are rarely ever supported by the overall medical evidence of record and are, quite often, the only evidence of a neuropsychological impairment contained in the record.

to work.[6]  Accordingly, we find no error in the ALJ's failure to give Dr. Smith's opinion controlling weight.

Plaintiff contends that Dr. Smith's assessment is bolstered by the fact that recent studies that have shown that untreated or under-treated chronic pain over time is so destructive of the frontal cortex that the brain can atrophy and literally shrink, altering neurochemistry and sensory function of the central nervous system.  The undersigned does not take issue with the studies cited by Plaintiff.  However, we note that Plaintiff has presented no evidence to indicate that she suffers from brain atrophy of central nervous impairments.  Accordingly, without evidence to indicate that Plaintiff is suffering from these symptoms, the mere presentation of evidence to suggest that chronic pain can lead to these impairments carries no weight.

Plaintiff also alleges that it was error for the ALJ to make an RFC determination without requesting an RFC assessment from her treating doctor.  The ALJ has a duty to develop only a "reasonably complete record," not the perfect record.  *See Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996); *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). Furthermore, an ALJ is permitted to issue a decision without obtaining additional evidence so long as other evidence in the record provides a sufficient basis for his or her decision.  *See Haley v. Massanari*, 258 F.3d 742, 748-49 (8th Cir. 2001); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir.  2001).  In the present case, Plaintiff did not seek out consistent treatment for her complaints, there is no indication that additional medical records exist to substantiate her claim of disability, her

---

[6]Although Plaintiff does report some issues with mixing up orders and giving back incorrect change, had these issues been significant, we believe she would have been fired from her position.  We find it hard to believe that a fast food chain would allow an individual to continue to work if the individual was a liability, even in the employee was friends with the manager as is alleged here.

AO72A
(Rev. 8/82)

physical exams yielded no significant limitations, and her doctors placed no restrictions on her physical activity. *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004) (ALJ is responsible for determining RFC, and in making determination should consider medical records, observations of treating physicians and others, and claimant's own description of his limitations); *see also Baldwin v. Barnhart*, 349 F.3d 549, 557 (8th Cir. 2003) (physicians noted few abnormalities, and none of Plaintiff's independent physicians restricted or limited Plaintiff's activities). As such, we do not believe the ALJ erred in failing to obtain an RFC assessment from her treating doctor. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (disability claimant has burden to establish RFC).

We also find that substantial evidence supports the ALJ's finding that plaintiff can return to her PRW as a fast food manager and fast food worker. Both of these positions were performed on a full-time basis within the last 15 years. And, we note that Plaintiff was performing work as a fast food worker on a part-time basis at the time of the hearing, and had been doing so since approximately October 2007. The vocational expert testified that the positions of fast food manager and fast food worker were both classified as light work. Tr. 394, 397. She indicated, however, that the managerial position was semi-skilled, while the worker position was unskilled. Tr. 394, 397.

Given the fact that the RFC determined by the ALJ is the same as the RFC required for these positions, the evidence does not negate Plaintiff's ability to perform the requisites of light work, and Plaintiff was performing work as a fast food worker on a part-time basis at the time of the hearing, we find substantial evidence supports the ALJ's decision in this regard. When an ALJ determines that a claimant can return to her past relevant work, the ALJ is not required

23

to use vocational expert testimony.  *See Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996);

*Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir. 1994).  Accordingly, the ALJ's determination

should stand.

**V.      Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting

the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be

affirmed, and plaintiff's Complaint be dismissed with prejudice.  **The parties have fourteen days**

**from receipt of our report and recommendation in which to file written objections pursuant**

**to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right**

**to appeal questions of fact.  The parties are reminded that objections must be both timely and**

**specific to trigger de novo review by the district court.**

DATED this 3rd day of May 2012.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

24